## UNDERWOOD v. LOUISVILLE & N. R. CO.
### No. 7987.

Circuit Court of Appeals, Seventh Circuit.
Nov. 9, 1942.

Rehearing Denied Nov. 27, 1942.

Writ of Certiorari Denied Feb. 8, 1943.

See 63 S.Ct. 559, 87 L.Ed. ——.

Lee J. Frank, of Chicago, Ill., Harold Baltz, of Belleville, Ill., and Wilton D. Chapman, of St. Louis, Mo., for appellant.

Louis E. Miller, of St. Louis, Mo., and Joseph B. McGlynn, of East St. Louis, Ill., for appellee.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a judgment, entered January 8, 1942, in favor of the plaintiff, in an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, to recover damages for the death of plaintiff's intestate. The sole error relied upon for reversal is the court's refusal to direct a verdict in favor of the defendant, and its refusal to enter judgment for the defendant, notwithstanding the verdict.

Plaintiff met his death while engaged with other members of defendant's train crew in performing a switching operation at Cullman, Alabama. At this point, defendant's tracks consist of two main tracks, a north and a southbound track. The north main track is to the east of the south main track, and a number of switch tracks lead from the former in a southerly direction to and by each side of the freight depot.

On the 28th day of June, 1939, defendant's freight train was proceeding northwardly, arriving at the city of Cullman sometime after dark. Its crew consisted of Phillips, conductor, Haines, fireman, Holmes, engineer, and Underwood (plaintiff's deceased), head brakeman. The train carried four cars destined for Cullman, which were detached from the train at a point south of the switching yard. The

engine pulling these four cars proceeded north to a point where five or six switch tracks intersected the north main track, for the purpose of placing these four cars on what is known as house track No. 1, which is located adjacent to and on the west side of the freight depot and platform.

This was the first time Underwood had worked in this yard at night, and he was unfamiliar with its layout. Before arriving at Cullman, he was shown a plat and diagram of the yards and instructed as to the operation of certain switches to be used in placing the cars at the intended location. He was warned that he should not climb on the side of the cars next to the freight depot because of the small clearance space.

The fireman and Underwood participated in the switching operations. The latter operated the main line switch and switch No. 2. This enabled the train to proceed north past switch No. 1. It was then the duty of Underwood to operate the latter switch so that the cars could be moved onto house track No. 1. Underwood signaled the fireman, who in turn signaled the engineer, that switch No. 1 had been operated. Instead of operating switch No. 1, however, Underwood operated switch No. 3, which caused the cars to enter pocket track No. 1, instead of switch track No. 1 as intended. The train proceeded to back about 200 feet, and until the engineer heard a crash, which was caused by a collision between the rear car and the covered platform. The pillars and posts of the platform were severed from their position, and the roof fell upon the top of the car. Underwood was caught between the roof and the top of the car, receiving injuries from which he subsequently died.

■ The only serious question presented is whether members of the crew other than the deceased were guilty of negligence, which was the proximate cause of the accident. This is so, notwithstanding defendant's contention that the proximate cause of the accident was the negligence of the deceased in throwing the wrong switch. It is true, of course, that the mistake in this respect was responsible for the cars moving on a track other than that intended. To what extent, if any, the deceased was guilty of contributory negligence, we need not discuss, for the reason that it is no defense under the Federal Employers' Liability Act. We are of the view that it cannot be held as a matter of law that such negligence, if any, was the proximate cause of the accident. Especially is this so, in view of the fact that the deceased was unfamiliar with the switching operations and that the same were being performed in the nighttime. The most that can be said is that the mistake created a situation, out of which the accident subsequently occurred. Even though the deceased was responsible for the cars being on a track other than the one intended, there still remains the question as to whether the engineer and the fireman were in the exercise of such care and caution as to preclude defendant's liability.

■ While numerous acts of negligence are charged, the one most strongly relied upon was defendant's failure to observe its safety rule No. 1011, which provides in part as follows: "If in switching, the signals are lost to view, stop must be made until signals can be seen." Not only was this a rule of the defendant, but it was shown by testimony to be the safe practice and custom of operation among railroad men. Both the engineer and the fireman were called as witnesses for the plaintiff, and their testimony plainly discloses either that one or both were responsible for the violation of this rule and custom, which, in our judgment, alone was sufficient to take the case to the jury.

The deceased, with a signal lantern, was charged with the responsibility of giving the signal for the stoppage of the car movement. The fireman testified that he was not looking for or intending to receive a stop signal, and the engineer testified that he was looking solely to the fireman for such signal. In other words, the engineer depended upon the fireman to obtain the signal from the deceased and relay it to him, and the fireman evidently depended upon the engineer to receive the stop signal direct from the deceased. Under that kind of an arrangement, we think there is merit in plaintiff's contention that it made little difference upon which track the cars were moving. The engineer did not stop the backward movement because of any signal he received, but only because of the collision. It may well be argued that the deceased signaled for a stop which, due to confusion between the engineer and the fireman as to which one was to take the signal, was not heeded. But whether so or not, it appears to have been incumbent upon the engineer to have known the whereabouts of the deceased and to have stopped the backward movement until the

"signals can be seen." Any other construction of the rule and custom would strip it of any protective value.

We need not discuss other alleged acts of negligence. On this feature of the case alone we think a jury question was presented and that it was properly submitted. The judgment is affirmed.